[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11152
Non-Argument Calendar

_____

Agency No. A96-279-230

JOSE LUIS PRADO,
a.k.a. Jose Parado,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 21, 2008)**

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

Jose Luis Prado, a native and citizen of Argentina, seeks review of the BIA's

dismissal of his appeal from the IJ's order denying Prado asylum under the Immigration and Nationality Act, 8 U.S.C. § 1158(a), and withholding of removal under both the INA, 8 U.S.C. § 1231(b)(3), and the Convention Against Torture (CAT), 8 C.F.R. § 208.16(c). Prado contends that the record compels a finding that he was persecuted on account of his homosexuality, that he has a well-founded fear of future persecution, and that he is likely to be tortured if he returns to Argentina.

**I.**

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, the BIA did not expressly adopt the IJ's opinion.

We review the BIA's determinations using the substantial evidence test, which requires us to uphold the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Rodriguez Morales v. United States Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S. Ct. 812, 815 (1992));. "To reverse the [BIA's] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also Elias-Zacharias, 502 U.S. at 481 n.1, 112 S. Ct. at 815 n.1.

2

## II.

To qualify for potential asylum in the United States, an alien must be a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). To establish "refugee" status, an alien must, with specific and credible evidence, show (1) that he is outside of his country of nationality, (2) that he is unable or unwilling to return to that country, (3) this inability or unwillingness is due to "persecution or a well-founded fear of persecution," and (4) that such persecution is "on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." 8 C.F.R. § 208.13(a)–(b); Al Najjar, 257 F.3d at 1287.

Here, Prado contends that he was persecuted in Argentina because he is gay. Prado testified that he was not openly gay in Argentina, but his involvement in the political Peronista party, the fact that he lived in a small town, and his appearance made his sexuality known. Prado testified to the following occurrences: a series of threatening, harassing, and insulting notes and phone calls; an arrest on a child custody issue, during which police officers made rude sexual comments to him;

3

once he was called a faggot and punched in the face; another time a policeman called him a faggot and hit him in the back with a nightclub; and finally, two men attempted to steal his motorcycle after calling him a faggot. Prado testified that all of this occurred between 1992 and 2000.

The government concedes that being homosexual gives Prado "membership in a particular social group" under 8 U.S.C. § 1101(a)(42)(A). Prado also obviously left his native Argentina, came to the United States, and desires not to return. The government's argument is that the treatment Prado received in Argentina was not egregious enough to compel a finding of past persecution under 8 U.S.C. § 1101(a)(42)(A).

Not all "exceptional treatment" constitutes persecution. Zheng v. United States Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006). We have held that persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Id. (quotation omitted).

First, the threatening phone calls and notes that Prado received were harassment, not persecution. Though Prado received death threats, such threats alone do not compel a finding of past persecution. See Silva v. United States Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006) (concluding that a Colombian applicant failed to establish 'persecution,' though she had received a "condolence

4

note" from the FARC regarding her own death); Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (concluding that "menacing phone calls and threats" to an applicant and her family, combined with a bombing at her workplace, were not 'persecution.').

Nor did Prado's experiences with the local police amount to persecution. Prado testified that he was arrested once on an issue unrelated to his sexuality, and while in custody he was insulted and threatened based on his sexuality, but not physically abused. Another time, he was insulted and struck by a police officer outside a nightclub. Though the officers' behavior was demeaning and frightening, it was not severe enough to be called persecution. See Zheng, 451 F.3d at 1290 (holding that a Chinese applicant was not persecuted, though he had been arrested, detained for five days and forced to stand in the sun and watch reeducation videos); Djonda v. United States Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (holding that an applicant who had been detained for 36 hours and suffered a beating by the police, but without serious injury, had not been persecuted).

Finally, Prado has not shown that being punched once in the street and nearly having his motorcycle stolen amount to persecution either. Ordinary criminal activity and acts of private violence are generally not 'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A). See Sanchez v. United States Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (citing Abdille v. Ashcroft, 242 F.3d 477,

5

494 (3d Cir. 2001) ("random street violence . . . arbitrary hostility, or . . . a desire to reap financial rewards [are] ordinary criminal activity [that] does not rise to the level of persecution necessary to establish eligibility for asylum.")).

Accordingly, Prado has not demonstrated that the record compels a finding that he was persecuted in Argentina.

### III.

To establish a "well-founded fear" of future persecution, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. An asylum applicant can establish a well-founded fear of future persecution by presenting "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" the statutorily listed factor. Id. at 1287 (quotation omitted). Alternatively, an applicant can establish a well-founded fear of persecution by showing that there is a pattern or practice of persecution of persons similarly situated on account of the statutorily listed factor. 8 C.F.R. § 1208.13(b)(2)(iii).

Prado has not shown a well-founded fear of future persecution. Prado failed to show that his prior mistreatment rose to the level of persecution— he was insulted often, but only physically struck three times in eight years—and has not provided evidence that his treatment would be any worse on his return to

6

Argentina. Though he asserts that all Argentinians hate gays, Prado did not submit any documentation of generalized persecution, and the Country Report for Argentina does not indicate human rights violations against gays. See Reyes-Sanchez v. United States Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (noting that State Department reports are "perhaps the best resource" for information about political situations in foreign nations). Further, Prado testified that because he was not openly gay in Argentina, his sexuality must have been evident to his harassers because he lived in a small town and because of his appearance. This suggests that Prado could take steps to reduce the risk of harassment by relocating within Argentina. See 8 C.F.R. § 1208.13(b)(2) ("An applicant does not have a well-founded fear of future persecution if the applicant could avoid persecution by relocating to another part of the applicant's country . . . if under all circumstances it would be reasonable to expect the applicant to do so."). Finally, Prado testified that during his entire final year in Argentina, while he was saving money to travel to the United States, he was not harmed or harassed at all.

On this record, substantial evidence supports the BIA's determination that Prado failed to demonstrate a well-founded fear of future persecution in Argentina. Therefore Prado is not eligible for asylum.

**IV.**

Prado also seeks withholding of removal under both the INA, 8 U.S.C. §

7

1231(b)(3)(A), and the CAT, 8 C.F.R. § 208.16(c). To avoid removal under the INA, "[a]n alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287. Because the evidentiary burden for withholding of removal is greater than that imposed for asylum, if an alien has not met the well-founded fear standard for asylum, he generally cannot meet the standard for withholding of removal. Al Najjar, 257 F.3d at 1292–93. ("Because the Al Najjars failed to demonstrate a "well-founded fear of persecution" sufficient to support an asylum claim, the BIA properly found that the Al Najjars were unable to satisfy the greater burden attending a request for withholding of removal."); Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir. 1996) (same).

Prado failed to make any argument in his appellate brief that this general rule is inapplicable to him; in fact, he failed to make any argument at all that he is entitled to withholding of removal under the statute. He therefore waived this issue entirely. See Sepulveda, 401 F.3d at 1228 n.2 ("[W]hen an appellant fails to offer argument on an issue, that issue is abandoned.").

To avoid removal under the Convention Against Torture, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). As under the INA, this burden of proof for the applicant is higher

8

than the burden imposed on an applicant for asylum. Therefore, an applicant like Prado, who cannot show that he has a well-founded fear of persecution, also cannot show that it is more likely than not that he would be tortured. Al Najjar, 257 F.3d at 1303; Zheng, 451 F.3d at 1292; Forgue v. United States Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (holding that where a petitioner fails to establish a claim for asylum on the merits, his claims for withholding of removal under the INA and CAT also necessarily fail).

Substantial evidence supports the BIA's determinations that Prado did not establish eligibility for asylum or withholding of removal under the INA or the CAT. The record does not compel a contrary conclusion.

**PETITION DENIED.**